**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4901**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

ROBERTO LARA, a/k/a Roberto Lopez,

              Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Beaufort. Solomon Blatt, Jr., Senior District Judge. (9:08-cr-01224-SB-2)

Submitted: March 19, 2012         Decided: April 2, 2012

Before MOTZ, KING, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Christopher L. Murphy, STUCKEY LAW OFFICES, LLC, Charleston, South Carolina, for Appellant. William N. Nettles, United States Attorney, Sean Kittrell, Assistant United States Attorney, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Roberto Lara pled guilty without benefit of a plea agreement to conspiracy to possess more than 500 grams of cocaine with intent to distribute, 21 U.S.C. § 846 (2006), and was sentenced to a term of 108 months' imprisonment. Lara appeals his sentence, contending that the district court erred in making an adjustment for obstruction of justice, U.S. Sentencing Guidelines Manual § 3C1.1 (2010). We affirm.

A two-level enhancement applies "[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." USSG § 3C1.1. Obstructive conduct includes "willfully failing to appear, as ordered, for a judicial proceeding." USSG § 3C1.1 cmt. n.4(E). It does not include "avoiding or fleeing from arrest." Id. cmt. n.5(D).

Lara was arrested by South Carolina law enforcement officers in February 2008 and charged with cocaine trafficking, but released on bond. Based on the same conduct, he was later indicted on a federal charge of conspiring to possess cocaine with intent to distribute. Although an arrest warrant was

2

issued with the indictment, Lara's attorney negotiated an agreement by which Lara would be permitted to surrender voluntarily. Instead of surrendering, Lara fled South Carolina. His wife informed the federal agent in charge that Lara didn't trust the government, thought he would get too long a sentence, and failed to appear for that reason. Subsequently she also disappeared with their children.

After several months, federal marshals located Lara's likely residence in Los Angeles and attempted to arrest a man outside the house who proved not to be him. The next day, Lara's wife consented to a search of the house. It contained no evidence that an adult male was living there. However, one of the young children pointed out the bed where his father slept. Lara's wife then cooperated and took the deputies to a construction business where she had taken Lara the night before, after the attempted arrest. The manager directed them to a job site where Lara was working. After a forty-minute search, Lara was located hiding in a ventilation shaft. He gave a false name, but was positively identified by his distinctive tattoos.

Lara contested his detention, asserting that he did not know he was wanted when he left South Carolina; he sought to be released and allowed to travel to South Carolina on his own to self-report there. Because the district court judge in California seemed inclined to release Lara, a federal agent

traveled to California to testify at the detention hearing, after which Lara was detained and returned to South Carolina.

At his sentencing hearing, the federal agent testified and the government introduced emails to the agent from Lara's former attorney stating that he had discussed the arraignment with Lara. Defense counsel argued that the evidence did not establish that Lara knew about his attorney's agreement for his self-surrender. He argued that his conduct amounted to fleeing from arrest, which usually does not constitute obstruction of justice. See USSG § 3C1.1 cmt. n.5(D). The district court determined that Lara knew of the agreement that he would self-surrender, willfully failed to appear, and subsequently engaged in further conduct intended to obstruct his prosecution.

On appeal, Lara acknowledges the distinction recognized in United States v. Gonzalez, 608 F.3d 1001 (7th Cir. 2010), cert. denied, 131 S. Ct. 952 (2011), between "panicked" or "instinctual" flight "in the immediate after-math of a crime," and "calculated evasion" or "a deliberate pre-or-post-arrest attempt to frustrate or impede an ongoing criminal investigation." 608 F.3d at 1007 (internal quotations and citation omitted). However, he argues that he did nothing more than flee to avoid arrest, that his wife's conduct in removing all signs of his presence from the house in Los Angeles should not be attributed to him, and that concealing himself in the

4

ventilation shaft was a panicked, spur-of-the-moment attempt to avoid arrest.

While mere flight may not trigger the § 3C1.1 adjustment, flight in circumstances that indicate deliberately obstructive conduct warrants it. See, e.g. United States v. Curb, 626 F.3d 921, 928 (7th Cir. 2010) (defendant who willfully failed to appear for sentencing and evaded capture for more than two months obstructed justice); United States v. Reeves, 586 F.3d 20, 23-24 (D.C. Cir. 2009) (defendant who willfully failed to appear at arraignment and remained a fugitive for eleven months obstructed justice); United States v. Dunham, 295 F.3d 605, 609 (6th Cir. 2002) (defendant who provided no adequate reason for his failure to appear in response to grand jury subpoena obstructed justice).

Here, the district court did not clearly err in finding as a fact that, when Lara fled South Carolina, he knew he had been indicted, an arrest warrant had been issued, and his attorney had arranged for him to surrender himself voluntarily. Lara's failure to surrender, his flight to California, and his attempts to evade capture when he was located there by federal marshals all constituted conduct intended to thwart his prosecution, rather than instinctive flight from arrest at the scene of a crime. Consequently, we conclude that the district court did not err in finding that Lara obstructed justice.

5

We therefore affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED