**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-4759**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

BILLY GENE JEFFERSON, JR.,

        Defendant - Appellant.

———————

**No. 14-4760**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

BILLY GENE JEFFERSON, JR.,

        Defendant - Appellant.

———————

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., District Judge. (3:13-cr-00221-JAG-1; 3:14-cr-00066-JAG-1)

———————

Submitted: March 30, 2015          Decided: May 22, 2015

———————

Before WYNN, DIAZ, and FLOYD, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

---

John S. Martin, John E. Beerbower HUNTON & WILLIAMS LLP, Richmond, Virginia, for Appellant. Dana J. Boente, United States Attorney, Michael R. Gill, Assistant United States Attorney, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Billy Gene Jefferson, Jr., pleaded guilty to major fraud against the United States, in violation of 18 U.S.C. § 1031, and unlawful monetary transactions, in violation of 18 U.S.C. § 1957(a). As part of the plea agreement, Jefferson agreed to pay $12,947,886.77 in restitution. To facilitate compliance with the restitution order, the district court permitted Jefferson to remain on bond pending sentencing, with the condition that he report any money transfers over $25,000 to the Internal Revenue Service. While on release, Jefferson failed to report multiple $100,000 money transfers, withdrew substantial amounts of cash, made thirty-three transfers just under the reporting threshold, and moved $2.1 million to the Aria Casino in Las Vegas, Nevada. Additionally, for the purpose of chartering a flight to England, Jefferson obtained a fake driver's license and provided a copy of that license to the charter company.

Based on Jefferson's conduct while on release, he was charged with and pleaded guilty to unlawful transfer of a false identification document, in violation of 18 U.S.C. § 1028(a)(1), (b)(1), and aggravated identity theft, in violation of 18 U.S.C.

3

§ 1028A(a)(1).[*]   Jefferson's four convictions were joined for purposes of sentencing, and the district court imposed an upward variant sentence totaling 240 months.   In these consolidated appeals, Jefferson challenges his sentence, arguing that (1) the district court erred in applying a two-level obstruction of justice adjustment under U.S. Sentencing Guidelines Manual § 3C1.1 (2013), (2) the district court erred in denying a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a), and (3) the 240-month sentence is substantively unreasonable.   We affirm.

"We review the reasonableness of a sentence under a deferential abuse-of-discretion standard, first ensuring that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range."   United States v. Cox, 744 F.3d 305, 308 (4th Cir. 2014) (internal quotation marks and brackets omitted).   In reviewing the district court's application of the Guidelines and its imposition of a sentencing enhancement, "we review factual findings for clear error and legal conclusions de novo."   United States v. Adepoju, 756 F.3d 250, 256 (4th Cir. 2014).   If we

---

[*] The indictment also charged Jefferson with obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), but this charge was dismissed as part of Jefferson's plea agreement in Case No. 3:14-cr-00066-JAG-1.

4

find no procedural error, we consider the substantive reasonableness of the sentence under "the totality of the circumstances." Gall v. United States, 552 U.S. 38, 51 (2007). Where the sentencing court imposed a variant sentence, we determine "whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. Washington, 743 F.3d 938, 944 (4th Cir. 2014) (internal quotation marks omitted).

The district court here applied a two-level obstruction of justice adjustment based on Jefferson's money transactions while on release pending sentencing. A two-level obstruction of justice adjustment is appropriate:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct, or (B) a closely related offense . . . .

USSG § 3C1.1. As "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness," "the conduct to which [the] enhancement applies is not subject to precise definition," and a sentencing court must compare the defendant's conduct to the examples of qualifying and nonqualifying conduct listed in Application Notes Four and Five, respectively. USSG

5

§ 3C1.1 cmt. n.3. Included in the nonexhaustive list of qualifying conduct is "conduct prohibited by obstruction of justice provisions under Title 18, United States Code," and "failing to comply with . . . an order to repatriate property issued pursuant to 21 U.S.C. § 853(p)." USSG § 3C1.1 cmt. n.4(I)-(J).

Jefferson's money transfers, which violated the court-ordered reporting requirement and dissipated assets intended for restitution, not only impeded the prosecution and sentencing of Jefferson's convictions in Case No. 3:13-cr-00221-JAG-1, arguably resulting in a violation of 18 U.S.C. § 1512(c)(2), but also constituted conduct analogous to a defendant's failure to comply with an order to repatriate property. Accordingly, Jefferson engaged in conduct sufficient to permit the district court to apply the obstruction of justice adjustment.

The adjustment is only applicable, however, where a defendant "willfully" engages in conduct that obstructs justice. USSG § 3C1.1; but see United States v. Nurek, 578 F.3d 618, 623 (7th Cir. 2009) (when imposing an obstruction of justice adjustment, "the sentencing judge is not required to parrot back the 'willful' language of the guideline"). Where the sentencing court is cognizant of § 3C1.1's intent element and the totality of the record supports the conclusion that the defendant willfully engaged in the obstructive conduct, the sentencing

6

court's application of the adjustment contains an implicit finding of defendant's willfulness. United States v. Dale, 498 F.3d 604, 609 (7th Cir. 2007). This is particularly true where the defendant's conduct "is directly and inherently obstructive-that is, where the defendant engages in behavior that a rational person would expect to obstruct justice." United States v. Reeves, 586 F.3d 20, 23 (D.C. Cir. 2009) (internal quotation marks omitted).

Here, the district court acknowledged the willfulness requirement when it read the language of the obstruction Guideline into the record. Although the district court did not use the word "willful" when later ruling on the adjustment, it made a series of statements regarding Jefferson's intent when engaging in the conduct. Most notably, the district court stated that Jefferson "took advantage of" the $25,000 reporting threshold and that the money transfers amounted to "thumbing your nose at the victims in this case." J.A. 548, 564. The district court's statements, combined with its findings regarding the grandiose nature and extent of Jefferson's monetary transactions, allow us to conclude that the district court implicitly found that Jefferson intended to obstruct justice when transferring the money. Accordingly, the district court did not err when it applied the two-level obstruction of justice adjustment.

7

As Jefferson concedes, if the district court did not err in its obstruction of justice analysis, then it also properly denied a two-level reduction for acceptance of responsibility. See USSG § 3E1.1 cmt. n.4 ("Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."). Therefore, we conclude that the district court did not commit procedural error when determining Jefferson's Guidelines range.

Based on our review of the record and the parties' briefs, we further conclude that Jefferson's above-Guidelines sentence is substantively reasonable. The district court did not abuse its discretion in determining that a variance was justified by the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense, the seriousness of the offense, and the need to deter criminal conduct, both Jefferson's and that of others. See § 3553(a)(1)-(2)(B). The district court adequately supported its decision to vary, as well as the extent of the variance, by relying on (1) Jefferson's continued fraudulent conduct after the arrest and sentencing of a compatriot in the tax fraud scheme, (2) Jefferson's conduct while on release pending sentencing, and (3) the impact Jefferson's conduct had on the integrity of the tax credit program he defrauded.

We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately expressed in the materials before this court and argument would not aid the decisional process.

AFFIRMED