**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 5, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JAIME FLORES-MARTINEZ,

     Defendant - Appellant.

No. 19-2074
(D.C. No. 1:18-CR-01144-JB-1)
(D. New Mexico)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

After Jaime Flores-Martinez ("Mr. Flores-Martinez") pleaded guilty to reentry by a removed alien, the United States petitioned to revoke his supervised release in a prior reentry case. The district court sentenced Mr. Flores-Martinez to 46 months' imprisonment on the guilty plea and to 10 months' imprisonment on the supervised release violation, with the sentences to run consecutively.

Mr. Flores-Martinez appeals from the sentence imposed on the supervised release violation, arguing that the district court committed two procedural errors and that imposing consecutive terms of imprisonment was substantively unreasonable.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Because the district court did not commit plain error with respect to either procedural issue, and because imposing consecutive terms of imprisonment was not an abuse of discretion, we affirm Mr. Flores-Martinez's 10-month sentence.

## I. BACKGROUND

On March 13, 2018, United States Customs and Border Patrol agents found Mr. Flores-Martinez just north of the Mexican border in Sunland Park, New Mexico. The agents determined that Mr. Flores-Martinez did not have legal authorization to enter or remain in the United States and arrested him. This was not Mr. Flores-Martinez's first illegal reentry into the United States and, at the time of his arrest, he was serving a term of supervised release for a June 21, 2012 illegal reentry conviction ("the June 2012 reentry").[1]

On April 10, 2018, the United States filed an information charging Mr. Flores-Martinez with reentry of a removed alien, in violation of 8 U.S.C. § 1326. That same day, Mr. Flores-Martinez pleaded guilty. The presentence investigation report ("PSR") on the new illegal reentry conviction calculated Mr. Flores-Martinez's total offense level as 27 and criminal history category as VI, for an imprisonment range of

---

[1] On June 14, 2014, Mr. Flores-Martinez was sentenced for a reentry that violated his supervised release based on the June 2012 reentry. That revocation proceeding resulted in a new term of imprisonment, followed by an additional 2 years of supervised release that commenced on May 12, 2016. Consequently, Mr. Flores-Martinez was serving a second term of supervised release in connection with the June 2012 reentry when he was arrested on March 13, 2018. All told, Mr. Flores-Martinez had been removed from the United States seven times prior to March 13, 2018.

2

130 to 162 months under the United States Sentencing Guidelines ("Sentencing Guidelines" or "Guidelines").

The United States petitioned to revoke Mr. Flores-Martinez's supervised release imposed for the June 2012 reentry based on his new conviction for illegal reentry. On January 29, 2019, the district court held a hearing to adjudicate the revocation petition stemming from the violation of conditions of supervised release imposed for the June 2012 reentry and to impose a sentence on the new reentry conviction.

At that hearing, Mr. Flores-Martinez admitted to the allegations in the petition. The United States and Mr. Flores-Martinez also agreed with the Guidelines calculations in the PSR.

With respect to Mr. Flores-Martinez's new reentry conviction, the district court found that a downward departure from the applicable Guidelines range was appropriate under U.S.S.G. § 4A1.3.[2] The district court consequently reduced Mr. Flores-Martinez's offense level to 17 and reduced his criminal history category to V, resulting in an applicable Guidelines range of 46 to 57 months. The district court sentenced Mr. Flores-Martinez at the low end of the Guidelines to 46 months' imprisonment, followed by a three-year term of supervised release.

Next, the district court addressed Mr. Flores-Martinez's violation of the conditions of supervised release on the June 2012 reentry conviction. Mr. Flores-

---

[2] The district court made clear that it would, in the alternative, also grant a downward variance under 18 U.S.C. § 3553(a).

3

Martinez asked that any sentence imposed for the supervised release violation run concurrently with the sentence imposed on the new reentry conviction. The United States disagreed, arguing that a concurrent sentence would "essentially nullify" the "deterrent effect" of supervised release. ROA, Vol. V at 29.

The district court found that Mr. Flores-Martinez had admitted to a Grade B supervised release violation and had a criminal history category of III, resulting in an applicable Guidelines range of 8 to 14 months. After observing that the Sentencing Guidelines are "advisory," the district court sentenced Mr. Flores-Martinez to 10 months' imprisonment on the supervised release violation, to run consecutively to the 46-month sentence for the new reentry conviction. The district court explained, "[Mr. Flores-Martinez has] been warned time and time again, and he hasn't received that warning, and I don't believe in two-for-ones." ROA, Vol. V at 33.

Mr. Flores-Martinez objected that imposing "another ten months of consecutive . . . imprisonment" for his supervised release violation was "unreasonable and unsupported by the goals of" § 3553 because he "did plead guilty . . . and has been sentenced to a term of 46 months already." ROA, Vol. V at 34. The district court overruled that objection, observing that "under the Guidelines it is recommended and directed that it be run consecutive, and until the Sentencing Commission wishes to change its stance on that, I believe that it's an appropriate sentence." ROA, Vol. V at 34. The district court further determined that, "considering the totality of the circumstances[,] . . . the 3553 factors are met." ROA, Vol. V at 34.

4

The district court entered judgment on March 29, 2019. After obtaining an extension of time under Fed. R. App. P. 4(b)(4), Mr. Flores-Martinez timely filed a notice of appeal on April 30, 2019.

## II.     DISCUSSION

Mr. Flores-Martinez challenges the lawfulness of his sentence on three grounds: (1) the district court incorrectly treated the Guidelines as mandatory; (2) the district court exhibited personal bias against the imposition of concurrent terms of imprisonment; and (3) the sentence imposed was substantively unreasonable. We disagree with each of these arguments and therefore affirm Mr. Flores-Martinez's sentence.

### A.   *Standard of Review*

"We consider the substantive reasonableness of the length of a sentence under an abuse-of-discretion standard." *United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1265 (10th Cir. 2018) (quotation marks omitted). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotation marks omitted).

"When a party challenges a sentence for procedural reasonableness, our standard of review is ordinarily abuse of discretion, under which we review de novo the district court's legal conclusions regarding the guidelines and review its factual findings for clear error." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012). "If, however, [a] [d]efendant did not preserve the procedural challenge below, we review only for plain error." *Id.*

5

A defendant "can obtain relief under the plain-error doctrine only if four requirements are satisfied: (1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the [d]efendant's substantial rights; and (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (second alteration in original) (internal quotation marks omitted).

### B. Analysis

**1. The District Court Did Not Treat the Guidelines as Mandatory.**

Mr. Flores-Martinez first argues that the district court erred by treating the Sentencing Guidelines as mandatory. But he did not object to the district court's treatment of the Guidelines at the sentencing hearing. Rather, his objection focused on whether "another ten months of consecutive" imprisonment was "unreasonable and unsupported by the goals of 3553." ROA, Vol. V at 34. We therefore review this argument under the plain error standard. Because we conclude the district court did not commit an error, we do not address the second, third, or fourth components of the plain error test.

The Supreme Court has explained that "treating the Guidelines as mandatory" is a "significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). Mr. Flores-Martinez argues that the district court treated the Guidelines as mandatory when it stated that "under the Guidelines it is recommended and directed" that the sentence for a supervised release violation run consecutive to any other sentence. ROA, Vol. V at 34. Specifically, Mr. Flores-Martinez points to the word "directed"

as evidence that the district court believed it lacked discretion to impose concurrent sentences. We disagree.

The district court properly treated the Guidelines as advisory. First, the district court explicitly referred to the Guidelines as "advisory" at the sentencing hearing. ROA, Vol. V at 32–33. Second, the district court correctly observed that the Guidelines "recommend[]" that Mr. Flores-Martinez's sentences run consecutively. ROA, Vol. V at 34. Third, the district court's use of the term "directed" logically refers to the unusually strong language of U.S.S.G. § 7B1.3(f), which states that terms of imprisonment "shall be ordered to be served consecutively."[3] Fourth, the district court—in the course of overruling Mr. Flores-Martinez's objection—applied the § 3553 factors to "the totality of the circumstances," a step that would have been unnecessary if it were bound by a mandatory guideline. ROA, Vol. V at 34.

In effect, Mr. Flores-Martinez asks us to infer that the district court committed a significant procedural error based only on its single use of the term "directed." But such an inference would contradict our usual presumption that district court judges "know the law and apply it in making their decisions." *United States v. Chavez-Meza*, 854 F.3d 655, 659 (10th Cir. 2017) (quotation marks omitted), *aff'd*, 138 S. Ct. 1959 (2018). We have no reason to doubt that the district court here was aware of the

---

[3] U.S.S.G. § 7B1.3(f) provides, in full, that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."

advisory nature of the Guidelines and correctly exercised its discretion in imposing consecutive sentences.

**2. Mr. Flores-Martinez Cannot Establish Plain Error with Respect to the District Court's Imposition of Consecutive Sentences.**

Mr. Flores-Martinez next contends that the district court erred at sentencing by exhibiting an impermissible bias against concurrent sentences. We are not convinced.

To begin, we must frame the issue under the proper standard of review. Mr. Flores-Martinez made no objection at the sentencing hearing to the district court's comment that it does not "believe in two-for-ones." ROA, Vol. V at 33. As previously noted, Mr. Flores-Martinez argued only that consecutive terms of imprisonment were "unreasonable and unsupported by the goals of 3553." ROA, Vol. V at 34. Because that substantive objection does not encompass Mr. Flores-Martinez's argument on appeal, we review this claim for plain error. *See Gantt*, 679 F.3d at 1246.

As discussed, Mr. Flores-Martinez can prevail only if he establishes: "(1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the [d]efendant's substantial rights; and (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (second alteration in original) (internal quotation marks omitted). For the reasons we now explain, even if the district court plainly erred, we cannot conclude the alleged error affected Mr. Flores-Martinez's substantial rights.

8

According to Mr. Flores-Martinez, the district court's reference to two-for-ones "ignore[d] the individualized consideration mandated by 18 U.S.C. § 3553(a)." Opening Br. at 9. He claims the district court's decision to impose consecutive terms of imprisonment was driven by its personal opposition to concurrent terms and thus constitutes plain error.

Mr. Flores-Martinez analogizes his case to the facts in *United States v. Haggerty*, 731 F.3d 1094 (10th Cir. 2013). In *Haggerty*, the government moved for a decrease in the defendant's offense level under U.S.S.G. § 3E1.1(b). Section 3E1.1(b) provides, that under certain circumstances, the government may file a motion "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."

At the sentencing hearing in *Haggerty*, the district court stated:

> I will never agree that avoidance of trial is a more efficient or appropriate allocation of resources. On the contrary, I think trials are the way that our system wants us to resolve these cases and that they are a good thing, not a bad thing. I do not think that saving the Government the task of preparing for trial is a benefit that's entitled to any weight, nor do I think that saving the Court the trouble of presiding over a trial is a positive that is entitled to any credit at all.

*Haggerty*, 731 F.3d at 1097.

On appeal, the United States and Haggerty each asked this court to reverse, and we did so. Specifically, we held "a sentencing judge's personal view that one should not be rewarded with a lesser sentence for pleading guilty is an impermissible

9

reason for denying a § 3E1.1(b) reduction and constitutes an abuse of discretion resulting in a procedurally unreasonable sentence." *Id.* at 1101.

Unlike the district court in *Haggerty*, however, the district court here expressed agreement—not disagreement—with the Guidelines statement. And rather than disregard the policy position articulated by the Sentencing Commission, the district court implemented it faithfully. We are not convinced that the district court's comments reflect impermissible bias.

But even if we agreed with Mr. Flores-Martinez that the district court plainly erred, he has not shown that the asserted error affected his substantial rights. To satisfy the third component of the plain error standard, Mr. Flores-Martinez must demonstrate "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005) (en banc) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)).

Here, Mr. Flores-Martinez asserts in a single sentence that, if the district court had not acted on its personal beliefs, it might have sentenced him to concurrent terms of imprisonment. Reply Br. at 7–8. But there is nothing in the record to support that assertion. To the contrary, the district court was clear that its consideration of the § 3553 factors would independently lead it to impose consecutive terms of imprisonment.

To be sure, § 3553 requires judges to consider policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3553(a)(4)(B). In other words, "district

10

courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Here, the relevant policy statement appears at U.S.S.G. § 7B1.3(f), which expresses an unequivocal preference for consecutive terms of imprisonment for violations of supervised release. *See United States v. Zamora-Solorzano*, 528 F.3d 1247, 1250–51 (10th Cir. 2008) (explaining that nothing in "our case law suggests that a district court is precluded from, in its individualized judgment, attributing considerable weight to a Guidelines sentence in a given case").[4]

But the district court did not rely solely on the Guidelines preference. Instead, after making its "two-for-ones" comment, the district court considered the § 3553 factors, explaining that they independently supported the imposition of consecutive sentences. Thus, even if the district court plainly erred in considering § 7B1.3(f), Mr. Flores-Martinez cannot show that it affected his substantial rights. For these reasons, Mr. Flores-Martinez's bias claim fails under our plain error test.

---

[4] Mr. Flores-Martinez also points to the judicial disqualification statute, 28 U.S.C. § 455, and this court's decision in *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993), for the proposition that a "sentence selected because of a sentencing judge's personal belief is an abuse of discretion." Opening Br. at 13. But *Cooley* did not address sentencing. There, we reached the unsurprising holding that a judge who had discussed anti-abortion protests during a television interview must disqualify himself from criminal prosecutions arising out of those same protests. *See* 1 F.3d at 995. Here, the district court did not say or do anything at the sentencing hearing to create an appearance of impropriety.

11

**3. The District Court's Imposition of Consecutive Terms of Imprisonment is Substantively Reasonable.**

Finally, Mr. Flores-Martinez argues that the district court's consecutive sentences are substantively unreasonable. "Under 18 U.S.C. § 3584(a), a district court has the discretion to impose consecutive or concurrent sentences . . . guided by the factors delineated by 18 U.S.C. § 3553(a)." *United States v. Rodriguez-Quintanilla*, 442 F.3d 1254, 1256 (10th Cir. 2006). We apply a rebuttable presumption of reasonableness to "a revocation-of-supervised-release sentence within the range suggested by the Commission's policy statements." *United States v. McBride*, 633 F.3d 1229, 1233 (10th Cir. 2011). In line with that presumption, we have repeatedly upheld the imposition of consecutive sentences for reentry by removed persons where that same reentry also violated the conditions of the defendant's supervised release. *See, e.g.*, *Ortiz-Lazaro*, 884 F.3d at 1265; *Rodriguez-Quintanilla*, 442 F.3d at 1258; *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005).

Here, the district court explained that it was imposing consecutive terms of imprisonment based on its analysis of the § 3553 factors. It acknowledged the advisory Guidelines range of 8 to 14 months' imprisonment and remarked on Mr. Flores-Martinez's many unlawful reentries. In response to Mr. Flores-Martinez's objection, the district court also considered U.S.S.G. § 7B1.3(f), which calls for consecutive sentences under these circumstances. This analysis evidences a reasoned

exercise of discretion by the district court in imposing consecutive terms of imprisonment.

Mr. Flores-Martinez argues that the district court failed to "adequately balance" three facts. Opening Br. at 14. First, most of his family lives in the United States. Second, he has no major criminal history. And third, he has secured work in Mexico and acknowledged to the district court that he is barred from visiting his family in the United States in the future.

Mr. Flores-Martinez—through counsel and on his own behalf—presented each of these mitigating facts to the district court at the sentencing hearing. When a district court entertains arguments about why terms of imprisonment should run concurrently, it is not an abuse of discretion to then reject those arguments based on the defendant's "offense, his criminal history, and all other relevant factors." *Contreras-Martinez*, 409 F.3d at 1242; *see also Rodriguez-Quintanilla*, 442 F.3d at 1257 (explaining that "sentencing a defendant to consecutive sentences following the revocation of supervised release is not unreasonable"). Considering Mr. Flores-Martinez's seven prior illegal reentries, the district court concluded consecutive sentences were appropriate despite these arguments.

Mr. Flores-Martinez next argues that imposing a term of imprisonment for a supervised release violation contravenes U.S.S.G. § 5D1.1(c). That provision states that a "court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable

13

alien who likely will be deported after imprisonment." The application note that accompanies subsection (c) further clarifies:

> In a case in which the defendant is a deportable alien specified in subsection (c) and supervised release is not required by statute, the court ordinarily should not impose a term of supervised release. Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. *The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.*

U.S.S.G. § 5D1.1 cmt. n.5 (emphasis added).

Mr. Flores-Martinez argues that § 5D1.1(c) implicitly disfavors imprisonment for the same reason that it explicitly disfavors supervised release. In other words, he believes that § 5D1.1(c)'s statement disfavoring supervised release implicitly contradicts § 7B1.3(f)'s statement favoring consecutive terms of imprisonment imposed upon the revocation of supervised release.

We have rejected this precise argument in at least three unpublished decisions. *See United States v. Rosales-Trujillo*, 781 F. App'x 688, 692 (10th Cir. 2019); *United States v. Perez-Ramos*, 525 F. App'x 868, 871 (10th Cir. 2013); *United States v. Gutierrez-Sierra*, 513 F. App'x 767, 770 (10th Cir. 2013). As we recently explained, § 5D1.1(c) "is not based on a view that there is no need to punish recidivism by aliens." *Rosales-Trujillo*, 781 F. App'x at 692. Rather, the "rationale is that there is no real need for a separate proceeding to increase the punishment by imposing a

14

sentence for violating conditions of supervised release, since the court can just impose a harsher sentence for the new violation itself." *Id.*

In this case, the district court's decision to impose consecutive terms of imprisonment must be understood together with Mr. Flores-Martinez's sentence on the new reentry conviction. To reiterate, the district court granted Mr. Flores-Martinez a downward departure with respect to that sentence. Then, consistent with the application note accompanying § 5D1.1(c), the district court analyzed the facts and circumstances of this case and found that an added term of imprisonment for the supervised release violation would best effectuate the § 3553 factors. Although the district court could have sentenced Mr. Flores-Martinez more harshly on the new reentry conviction and not imposed a sentence for violation of the conditions of supervised release from his June 2012 reentry conviction, it was not required to do so. Thus, none of Mr. Flores-Martinez's arguments rebut the presumption of reasonableness we attach to the district court's imposition of consecutive terms of imprisonment.

## III.   CONCLUSION

Because the district court did not commit any plain procedural error, and because the district court's imposition of a 10-month, consecutive sentence for

15

Mr. Flores-Martinez's supervised release violation was substantively reasonable, we

**AFFIRM** Mr. Flores-Martinez's sentence.

Entered for the Court


Carolyn B. McHugh
Circuit Judge