FILED
United States Court of Appeals
Tenth Circuit

March 15, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID JELEB GOLDBERG,

    Defendant - Appellant.

No. 20-6090
(D.C. No. 5:19-CR-00218-HE-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

David Jeleb Goldberg appeals from his conviction for possessing cocaine with

intent to distribute and his sentence of 72 months' imprisonment.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

On June 29, 2019, an Oklahoma state trooper stopped Goldberg for traffic

violations on I-40.  While the trooper was writing a warning, another trooper brought

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

a certified drug-sniffing dog, Stormy, to the scene. While walking Stormy around Goldberg's vehicle, the handler saw that she "slowed down, became more methodical around the passenger side rear hatch of the vehicle." R. Vol. III at 68. He also "noticed when we got to the passenger side front door, the window was down and she sticks her nose up there and actually hops up, puts her paws up on the vehicle and moves her head back and forth. And then she gets off of the vehicle and just stands still and freezes." *Id.* Interpreting her behavior as an alert, the troopers searched the vehicle, uncovering two kilo-sized bricks of cocaine.

Goldberg moved to suppress the evidence of the cocaine on several grounds. As relevant to this appeal, while recognizing that "a positive dog alert gives officers probable cause to search," *United States v. Parada*, 577 F.3d 1275, 1281 (10th Cir. 2009), he disputed whether Stormy's behavior amounted to an alert. At an evidentiary hearing, Stormy's handler testified that she was trained to sit if "she can go directly to the source" of the odor. R. Vol. III at 66. But if she cannot go directly to the source, she may exhibit "a change of behavior, which is anything other than a normal pattern." *Id.* The trooper testified that even though she did not sit, Stormy's behavior around the passenger side of the vehicle constituted an alert.

Crediting the trooper's testimony, the district court found that Stormy's behavior was an alert. "[W]e're talking about training a team where they are trained to work with each other and, obviously, the officer's ability to discern changes in the behavior of the dog is more attuned to the dog's training and nature than anything one of us looking at it from a distance might do." *Id.* at 92. Accordingly, the court

2

held that probable cause supported the search leading to the cocaine, and it denied the motion to suppress.

Goldberg accepted a plea agreement and pleaded guilty to one count of possessing 500 grams or more of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Because the violation of § 841(a)(1) carried a mandatory five-year minimum, *see id.* § 841(b)(1)(B), the Sentencing Guidelines range of 46 to 57 months became 60 months. The district court, however, granted the government's motion for an upward variance and sentenced Goldberg to 72 months' imprisonment.

Goldberg now appeals.

## DISCUSSION

**I.    Motion to Suppress**

Goldberg first argues that the district court erred in denying his motion to suppress, an issue his plea agreement preserved for appeal. Viewing the evidence in the light most favorable to the government, we review the district court's factual findings for clear error and the legal question of reasonableness under the Fourth Amendment de novo. *United States v. Castorena-Jaime*, 285 F.3d 916, 924 (10th Cir. 2002).

Goldberg challenges the conclusion that Stormy's behavior established probable cause. He argues that Stormy did not indicate she smelled drugs in the manner in which she was trained—sitting—and that her handler's interpretation of a change in behavior is insufficient to constitute an alert. It is unclear whether Goldberg intends this argument (1) to challenge the district court's factual finding

3

that Stormy's behavior constituted an alert, (2) to urge this court to hold, as a matter of law, that only a dog's trained signal of final indication can establish probable cause, or (3) both. But however he intends the argument, it fails.

To the extent that Goldberg brings a factual challenge, he must establish that the district court clearly erred. *See Parada*, 577 F.3d at 1281. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Castorena-Jaime*, 285 F.3d at 924 (brackets and internal quotation marks omitted). Goldberg has not satisfied this standard. The district court was entitled to credit the handler's testimony that Stormy's behavior changed and that the change of behavior served as an alert. *See United States v. Moore*, 795 F.3d 1224, 1231 (10th Cir. 2015) (concluding that finding of alert, supported by handler's testimony about change of behavior, was not clearly erroneous); *Parada*, 577 F.3d at 1279, 1281 (same).

To the extent that Goldberg brings a legal challenge, this court has held that an alert, as opposed to a final indication, is sufficient to establish probable cause. *See Moore*, 795 F.3d at 1232 ("We have held that an alert, or a change in a dog's behavior in reaction to the odor of drugs, is sufficient to establish probable cause to search a vehicle, and that a final indication is not necessary."); *Parada*, 577 F.3d at 1282 ("[T]he general rule we have followed is that a dog's alert to the presence of contraband is sufficient to provide probable cause. We decline to adopt the stricter rule urged by Mr. Parada, which would require the dog to give a final indication

before probable cause is established."). "[I]t is almost axiomatic that one panel of this court cannot overrule another panel." *Parada*, 577 F.3d at 1280 (internal quotation marks omitted). We therefore reject Goldberg's request to hold, as a matter of law, that Stormy's alert was not sufficient to establish probable cause to search his vehicle.

## II.    Reasonableness of Sentence

Goldberg next argues that this sentence was both procedurally and substantively unreasonable.

### A.    Procedural Reasonableness

Goldberg's plea agreement waived "the right to appeal [his] sentence as imposed by the Court, including any restitution, and the manner in which the sentence is determined." R. Vol. I at 63. The government argues that this waiver bars his arguments about procedural unreasonableness. In considering whether to enforce an appeal waiver, we examine "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). Enforcing an appeal waiver results in a miscarriage of justice when (1) "the district court relied on an impermissible factor such as race," (2) "ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid," (3) "the sentence exceeds the

5

statutory maximum," or (4) "the waiver is otherwise unlawful." *Id.* at 1327 (internal quotation marks omitted).

"Procedural reasonableness addresses whether the district court incorrectly calculated the Guidelines sentence, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately explain the sentence." *United States v. Haggerty*, 731 F.3d 1094, 1098 (10th Cir. 2013) (ellipsis and internal quotation marks omitted). We are satisfied that in this case the broad scope of the appeal waiver encompasses these arguments. Moreover, both the plea agreement and the plea colloquy support the conclusion that Goldberg knowingly and voluntarily accepted the waiver. And the record does not indicate that enforcing the waiver would result in a miscarriage of justice, as that term is defined by *Hahn*, 359 F.3d at 1327. We therefore enforce the appeal waiver and decline to consider arguments that bear solely upon procedural reasonableness.

**B.     Substantive Reasonableness**

In contrast, the waiver reserved Mr. Goldberg's right to appeal the substantive reasonableness of his sentence "[i]f the sentence is above the advisory Guidelines range determined by the Court to apply to [his] case." R. Vol. I at 63. This exception applies here because of the upward variance. We review substantive reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "Applying this standard, we give substantial deference to the district court and will only overturn a sentence that is arbitrary, capricious, whimsical, or manifestly

unreasonable." *United States v. Peña*, 963 F.3d 1016, 1024 (10th Cir. 2020) (internal quotation marks omitted), *cert. denied*, 208 L. Ed. 2d 559 (U.S. 2021).

"Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (internal quotation marks omitted). "When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. Mere disagreement with the weight the district court gave various factors does not establish that a sentence is substantively unreasonable. *See Peña*, 963 F.3d at 1025, 1026; *see also Gall*, 552 U.S. at 51 (stating that the appellate court must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance").

The district court highlighted that (1) this drug offense was substantially similar to Goldberg's prior felony conviction, and (2) he committed this offense soon after being released from incarceration on the prior offense. Goldberg asserts that both of these reasons implicate § 3553(a)(2), which requires the court to consider the "basic aims of sentencing, namely (a) just punishment (retribution), (b) deterrence, (c) incapacitation, and (d) rehabilitation," *United States v. Walker*, 844 F.3d 1253, 1256 (10th Cir. 2017) (internal quotation marks omitted). He argues that the district court thereby unduly weighed that factor, to the exclusion of the other § 3553(a) factors. After examining all the circumstances, however, we are not persuaded that

7

the district court's 12-month upward variance was arbitrary, capricious, whimsical, or manifestly unreasonable.

In 2012, Goldberg was convicted of conspiracy to distribute heroin and received a 60-month sentence. Less than a year after being released, he violated his supervised release and was sentenced to ten months' additional incarceration. He was released from that incarceration in April 2018, but just over a year later, he committed the instant offense. The district court permissibly considered that the instant offense's similarity and proximity to the previous offense showed a troubling recidivist tendency. *See United States v. Singer*, 825 F.3d 1151, 1160 (10th Cir. 2016); *see also United States v. Franklin-El*, 554 F.3d 903, 913 (10th Cir. 2009).

Moreover, contrary to the assertion that the district court focused only on § 3553(a)(2), the information about the prior conviction also implicated § 3553(a)(1), which requires the district court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." *See Singer*, 825 F.3d at 1160. The district court further explicitly considered Goldberg's history and characteristics in setting the length of the variance. The court explained that it had considered a greater variance, but settled on 12 months in part due to crediting Goldberg's allocution statement that the recent birth of his first child had helped mature and change him. "I do . . . credit the defendant's explanation that – or the defendant's assurance essentially that he's learned his lesson and will hopefully move in a different direction now that he does have family responsibilities that he didn't have before." R. Vol. III at 110.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court


Joel M. Carson III
Circuit Judge